IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER A. DIKES, an individual, NATIONAL HEATING COMPANY, a sole proprietorship, JASON HICKS, an individual,<br><br>Defendants. | Cause No. 2:18-CV-61<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

## I.   PARTIES

1.   Plaintiff United Financial Casualty Company (hereinafter "UFCC") is a foreign insurance company organized under the laws of the State of Ohio with a principal place of business in the State of Ohio.

2.   Defendant Christopher A. Dikes is a resident of Pierce County, Washington and a citizen of the State of Washington.

3.   Defendant National Heating Company is a Washington sole proprietorship,

**COMPLAINT – 1**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

wholly owned and operated by Dikes.[1]

4. Defendant Jason Hicks is a resident of King County, Washington.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

6. Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as this case involves claims for insurance benefits stemming from alleged losses which occurred in King County, Washington.

## III. FACTS

**A.  The Underlying Accident and Claim Against Dikes**

7. On or about November 12, 2016, Dikes and Hicks were involved in a multi-vehicle automobile accident on Interstate 5 in Seattle, Washington.

8. At the time of the subject accident, Dikes was operating a 2000 GMC Safari.

9. Following the accident, Hicks alleged that Dikes was negligent in the operation of his motor vehicle and that Dikes is legally liable for bodily injuries and other damages, including the following:

- Medical Expenses
- Mileage & Travel Expense
- Wage Loss
- Pain and Suffering
- Loss of Enjoyment of Life
- Disability
- Fear of Increased Risk

---

[1] For the sake of clarity, Defendants Christopher A. Dikes and National Heating Company will be referred to collectively throughout this Complaint as "Dikes" unless specifically identified separately.

**COMPLAINT – 2**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

10. As of the date of this filing, Hicks has made a claim against Dikes, though no suit has been filed. Nonetheless, as a matter of good faith and fair dealing, UFCC has agreed to defend Dikes against the Hicks Claim subject to an express reservation of rights.

**B.** **Dikes' Claim Under the UFCC Policy**

11. At the time of the subject accident, Dikes was insured pursuant to the terms and conditions of a commercial automobile policy issued by UFCC.

12. In March of 2017, UFCC was made aware of the accident when it was contacted by Hicks to assert a claim against Dikes.

13. On April 12, 2017, UFCC made contact with Dikes to discuss the accident and the Hicks Claim.

14. During that call Dikes tendered a claim for defense and indemnity under the UFCC Policy.

15. In its review of the information available about the subject accident, UFCC determined that the automobile being operated by Dikes at the time of the loss, the 2000 GMC Safari, was not identified as an "insured auto" as that term is defined by the subject UFCC Policy. As such, based on the information then available, UFCC determined that there may not be coverage available to Dikes for the subject accident.

16. In an effort to further investigate whether Dikes may be entitled to coverage, UFCC made multiple attempts to contact Dikes over the next several months.

17. UFCC sent several letters and left multiple telephone messages with Dikes attempting to obtain additional information about the loss, the identity of the subject automobile, and other information material to UFCC's coverage evaluation. Dikes did not respond to any of UFCC's communications.

COMPLAINT – 3
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

18. On September 18, 2017 UFCC sent a letter to Dikes requesting that he appear for an Examination Under Oath (EUO). The September 18, 2017 letter also asked Dikes to submit relevant documentation relating to the loss and the identity of the automobile that he was operating at the time. Dikes did not appear for the EUO, did not make contact with UFCC, and did not submit any of the requested documentation.

19. On October 12, 2017, UFCC sent another letter to Dikes, this time by certified mail, requesting he appear for a EUO and submit relevant documentation relating to the loss. Dikes did not appear for his rescheduled EUO, did not make contact with UFCC, and did not submit any of the requested documentation.

20. On December 6, 2017, UFCC issued another letter to Dikes advising him again of his obligations under the policy and requesting further information with regard to the subject accident and the vehicle that Dikes was operating at that time thereof.

21. Dikes did not respond to UFCC's communications.

22. Despite receiving no further information or contact from Dikes, UFCC has agreed to defend Dikes in regard to the Hicks Claim subject to an express reservation of rights, including the right to seek a declaratory ruling from this Court that it does not owe any defense or indemnity obligations to Dikes.

**C.      The UFCC Policy**

23. UFCC issued policy no. 03936314-0, effective September 28, 2016 to March 28, 2017 (hereinafter the "UFCC Policy") to named insured Christopher A. Dikes, National Heating Company.

24. The UFCC Policy terms are provided in Commercial Auto Policy Form 6912 (06/10). UFCC issued an Employer's Non-Ownership Liability Endorsement to the Policy.

**COMPLAINT – 4**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Those terms are in Form 1890 (03/08). UFCC also issued a Hired Auto Coverage endorsement. Those terms are in Form 1891 (03/08). These are the only Forms potentially implicated by the claims against Dikes arising from the subject accident.

25.  The UFCC Policy lists the following covered vehicles in the policy Declarations:

> 1. 2005 Nissan Quest (VIN: 5N1BV28U55N128141)
> 2. 2004 Chevrolet Astro (VIN: 1GCDM19X74B124658)

26.  The insuring agreement for liability coverage in the UFCC Policy contains the following language, in pertinent part:

> **INSURING AGREEMENT - LIABILITY TO OTHERS**
>
> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . .
>
> **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements, judgments or settlements.

Policy Form 6912 (06/10), Pg. 6.

27.  The UFCC Policy contains the following definitions that apply to the foregoing Insuring Agreement:

> 2.  "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads,  or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**.

**COMPLAINT** – 5
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

Policy Form 6912 (06/10), Pg. 2.

5. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or

   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:

      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

      If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

      With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

   c. Any replacement **auto** on the date **you** become the owner if:

      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

**COMPLAINT** – 6
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

        (ii)    the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

        (iii)    no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits or make any other changes to **your** policy during this 30 day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes.

Policy Form 6912 (06/10), Pg. 2 & 3.

    14.    "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Policy Form 6912 (06/10), Pg. 5.

28. The UFCC Policy further contains the following definitions applicable specifically to the Liability to Others coverage part:

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I - Liability To Others, **insured** means:

1. **You** with respect to an **insured auto**.

**COMPLAINT – 7**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

  2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

   (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

   (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.

   (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

  For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

[. . .]

 B. When used in Part I - Liability To Others, **insured auto** also includes:

[. . .]

  3. Any **temporary substitute auto**.

Policy Form 6912 (06/10), Pg. 6 & 7.

 29. The UFCC Policy includes Endorsements that also apply to the foregoing Insuring Agreement.

**COMPLAINT** – 8
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT**

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or **your** personal affairs.

Form 1890 (03/08).

**CHANGES TO PART I - LIABILITY TO OTHERS**

The definition of **insured auto** is modified to include a **non-owned auto**. The definition of **insured** does not include the owner of a **non-owned auto**.

**EXCLUSIONS**

The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member and which is not shown as the named insured on the **Declarations Page**.

Form 1890 (03/08).

**HIRED AUTO COVERAGE ENDORSEMENT**

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

If **you** pay a premium for this Hired Auto Coverage, then the following definitions are added:

1. "**Hired auto**" means an **auto you** lease, hire, rent or borrow. This does not include any **auto you** lease, hire, rent or borrow from any of **your** employees, partners (if

**COMPLAINT** – 9
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

>> **you** are a partnership), members (if **you** are a limited liability company) or member of their households.
>
> 2. "**Cost of hire**" means the total amount paid by **you** for the hire of **autos**, including charges for services performed by motor carriers of property or passengers that are subject to the compulsory requirements of any motor carrier laws or regulations.

Form 1891 (03/08).

### Changes to Part I – Liability To Others

> When used in Part I – Liability To Others, the definition of **insured auto** is amended to include a **hired auto**.

Form 1891 (03/08).

30. The UFCC Policy also contains the following language relating to the definition of an "insured":

> If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

Form 6912 (06/10) p. 6.

31. To the extent that the Insuring Agreement in the UFCC Policy is potentially triggered as a result of the Hicks Claim, the UFCC Policy includes the following exclusion that may operate to limit or preclude coverage:

> Coverage under this Part I, including **our** duty to defend, does not apply to:
>
> 1. **Expected or Intended Injury**
>
>    **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

Policy Form 6912 (06/10), Pg. 9.

**COMPLAINT** – 10
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

32. The UFCC Policy contains the following terms with regard to duties of an insured after a loss:

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

A person seeking coverage must:

**1.** cooperate with **us** in any matter concerning a claim or lawsuit;
. . .
**3.** allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, or any other person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

**4.** promptly call **us** about any claim or lawsuit and send **us** any and all legal papers relating got any claim or lawsuit;

**5**. attend hearings and trials as **we** require;
. . .
**10.** authorize **us** access to **your** business or personal records as often as **we** may require.

Policy Form 6912 (06/10), Pg. 1.

33. The UFCC Policy contains the following provisions relating to Other Insurance:

3. **Other Insurance**

a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page** coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** which is specifically described on the **declarations page** is a **trailer**, this policy will be primary only if the **trailer** is attached to an **insured auto** that is a power unit **you** own and is specifically described on the **declarations page**, and excess in all other circumstances.

**COMPLAINT** – 11
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

        b.        If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Policy Form 6912 (06/10), Pg. 22.

34. UFCC reserves the right to assert any other policy language or policy coverage forms that may be potentially applicable to the Underlying Claim.

**IV.   THERE IS AN ACTUAL AND JUSTICIABLE CONTROVERSY AS TO UFCC'S COVERAGE OBLIGATIONS**

35. There is no coverage available to Dikes for the claims asserted by Hicks in the Underlying Claim.

36. The UFCC Policy provides liability coverage for damages, other than punitive or exemplary damages, for bodily injury for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of an "insured auto" as that term is defined.

37. The UFCC Policy defines an "insured auto" as any auto identified in the Declarations.

38. The 2000 GMC Safari that was being operated by Dikes at the time of the accident is not identified in the Auto Coverage Schedule in the UFCC Policy Declarations.

39. There is an actual and justiciable controversy as to whether the 2000 GMC Safari qualifies as an "insured auto" for purposes of coverage by virtue of it being identified as such in the UFCC Policy Declarations.

40. The Policy further defines "insured auto" to include an "additional auto" if the insured acquired that auto during the policy period, UFCC insures all other of insured's autos,

COMPLAINT – 12
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

no other insurance applies to the additional auto, and insured tells UFCC within 30 days of acquiring the auto that it wishes for UFCC to provide coverage for the auto.

41. There is no evidence that Dikes acquired an ownership interest in the 2000 GMC Safari during the UFCC Policy or that Dikes advised UFCC that he wished to add the 2000 GMC Safari to the UFCC Policy within thirty days of its purchase.

42. There is an actual and justiciable controversy as to whether the 2000 GMC Safari qualifies as an "insured auto" for purposes of coverage by virtue of it being an "additional auto" as that term is defined.

43. The Policy further defines "insured auto" to include an "replacement auto" if the insured acquired that auto during the policy period to replace an auto identified in the UFCC Declarations, UFCC insures all other of insured's autos, no other insurance applies to the replacement auto, and insured tells UFCC within 30 days of acquiring the auto that it wishes for UFCC to provide coverage for the auto.

44. There is no evidence that Dikes acquired an ownership interest in the 2000 GMC Safari during the UFCC Policy or that the 2000 GMC Safari was purchased to replace one of the autos identified in the UFCC Policy Declarations. Moreover, there is no evidence that Dikes advised UFCC that he wished to add the 2000 GMC Safari to the UFCC Policy within thirty days of its purchase.

45. There is an actual and justiciable controversy as to whether the 2000 GMC Safari qualifies as an "insured auto" for purposes of coverage by virtue of it being a "replacement auto" as that term is defined.

46. The Policy further defines "insured auto" to include a "temporary substitute auto" as an auto the insured does not own while used with the permission of its owner as a

COMPLAINT – 13
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

47. There is no evidence that Dikes was operating the 2000 GMC Safari as a temporary substitute auto in place of any insured auto withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

48. There is an actual and justiciable controversy as to whether the 2000 GMC Safari qualifies as an "insured auto" for purposes of coverage by virtue of it being a "temporary substitute auto" as that term is defined.

49. The policy further adds the definition of "non-owned auto" to cover an auto an insured does not own, lease, hire, rent, or borrow, and that is used in connection with an insured's business.

50. There is no evidence that Dikes did not own the 2000 GMC Safari or that he was operating the 2000 GMC Safari in connection with his business at the time of the accident.

51. There is an actual and justiciable controversy as to whether the 2000 GMC Safari qualifies as an "insured auto" for purposes of coverage by virtue of it being a "non-owned auto" as that term is defined.

52. The policy further adds the definition of "hired auto" to cover any auto an insured leases, hires, rents or borrows, not including any auto an insured leases, hires, rents or borrows from any of the insureds employees, partners, members, or member of their household.

53. There does not appear to be any evidence that the 2000 GMC Safari was hired, rented or borrowed by Dikes. Additionally, UFCC has been unable to ascertain how Dikes acquired the 2000 GMC Safari he was allegedly operating, which was involved in the accident.

54. There is an actual and justiciable controversy as to whether the 2000 GMC

**COMPLAINT** – 14
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Safari qualifies for coverage by virtue of it being a "hired auto" as that term is defined.

55. The UFCC Policy includes conditions to coverage including that the insured cooperate with UFCC in any matter concerning a claim or lawsuit, promptly call about any claim or lawsuit and send UFCC any and all legal papers relating to any claim or lawsuit, allow UFCC to take signed and recorded statements, including sworn statements and examinations under oath and answer all reasonable questions UFCC may ask as often as UFCC may reasonably require.

56. UFCC has unsuccessfully attempted to contact Dikes as the named insured under the UFCC policy regarding the claim to obtain additional information regarding the accident and the 2000 GMC Safari Dikes was asserted to have been driving, which was involved in the accident.

57. UFCC has requested that Dikes appear for and participate in an examination under oath as described under the cooperation condition of the UFCC policy but has not been able to make contact with Dikes and he did not appear for the examination under oath.

58. UFCC has requested that Dikes submit certain information to UFCC with regard to the acquisition and ownership of the 2000 GMC Safari Dikes was asserted to have been driving, which was involved in the subject accident. Dikes has provided no documentation with regard to the acquisition or ownership of the 2000 GMC Safari.

59. UFCC has no way of obtaining further information regarding the acquisition or ownership of the 2000 GMC Safari involved in the subject accident without Dikes' cooperation.

60. Dikes' failure to cooperate with UFCC has materially prejudiced UFCC's ability to investigate the Hicks Claim.

**COMPLAINT** – 15
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

61. To the extent that the insuring agreement of the UFCC Policy has been triggered, there is an actual and justiciable controversy as to whether Dikes has failed to cooperate pursuant to the terms and conditions of the UFCC Policy.

62. There is an actual and justiciable controversy as to whether Dikes' failure to cooperate has materially prejudiced UFCC, thereby precluding coverage for the Hicks claim.

63. The UFCC Policy does not provide coverage for damages for bodily injury expected by or intentionally caused by an insured.

64. There is an actual and justiciable controversy to the extent that the accident was intentionally caused by an insured or an expected outcome of an insured's actions.

65. The UFCC Policy provides that any coverage provided thereunder is excess over all other valid and collectible insurance when a claim involves a vehicle not specifically described in the UFCC Policy.

66. To the extent it is determined that the UFCC Policy provides coverage, there is an actual and justiciable controversy as to whether the UFCC Policy is excess over other valid and collectible insurance available to Dikes or the owner of the 2000 GMC Safari for purposes of the Underlying Claim.

67. There is an actual and justiciable controversy as to whether UFCC has or had any duty to defend Dikes against the Underlying Claim.

68. Pursuant to the UFCC Policy, to the extent that Dikes has liability for damages for bodily injury, and coverage is not otherwise excluded, coverage under the UFCC Policy is limited to a $100,000 combined single limit.

69. UFCC reserves the right to assert any other exclusions or grounds for which coverage for the claims against Dikes may be excluded under the policy of insurance issued by

**COMPLAINT** – 16
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

UFCC.

## V. FIRST CAUSE OF ACTION – DECLARATORY RELIEF

70. UFCC incorporates by reference as though fully set forth herein, and restates and re-alleges each of the paragraphs 1 through 69 above.

71. UFCC is entitled to Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any coverage obligations to Dikes, or any other agent or employee National Heating Company under the policy of insurance issued by UFCC to Dikes for the claims asserted in the Underlying Lawsuit.

72. UFCC is further entitled to a judicial determination that it is not obligated to provide or continue to provide Dikes, or any other agent or employee of National Heating Company with a defense against the Underlying Claim.

## VII. PRAYER FOR RELIEF

UFCC, having alleged the foregoing, does now, hereby, prays for relief as follows:

1. For a declaration that UFCC owes no defense obligation to Dikes for the Underlying Claim.

2. For a declaration that UFCC owes no indemnity obligation to Dikes for the Underlying Claim.

3. For a declaration that UFCC owes no indemnity obligation to any agent or employee of National Heating Company not named in the Underlying Claim for any claims asserted in the Underlying Claim.

4. For all interest allowed by law.

5. For attorney fees and costs allowed by statute and law.

6. For other and further relief as the Court deems just and equitable.

**COMPLAINT – 17**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

DATED this 16th day of January, 2018.

          LETHER & ASSOCIATES, PLLC

          */s/ Thomas Lether*
          Thomas Lether, WSBA #18089
          */s/ Eric J. Neal*
          Eric J. Neal, WSBA #31863
          1848 Westlake Avenue N, Suite 100
          Seattle, WA 98109
          P: (206) 467-5444/F: (206) 467-5544
          eneal@letherlaw.com
          tlether@letherlaw.com
          *Attorneys for United Financial Casualty Company*

**COMPLAINT – 18**
S:\FILES\Dikes, Christopher 17093\Pleadings\DJA Complaint\180116 DJA Complaint Final.docx

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544